# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | |
|---|---|
| LAURA ANN DAVIS, | |
| Plaintiff, | Case No.:  3:24-cv-599 |
| vs. | |
| LEXISNEXIS RISK SOLUTIONS, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT

Laura Ann Davis ("Plaintiff" or "Ms. Davis") by and through her counsel brings the following Complaint against LexisNexis Risk Solutions, Inc. ("Defendant" or "LexisNexis") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a background check report that Defendant published to Plaintiff's auto insurer USAA, which falsely portrayed Plaintiff as having three traffic violations.

## INTRODUCTION

1.      This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.      Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis.  It sells consumer reports generated from

1

its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.     Defendant falsely reported to Plaintiff's auto insurer, USAA, that Plaintiff was convicted of Failure to stop at a stop sign/intersection (Case No. 2A0612697KTCIT), Driving with a suspended license (Case No. 2A0612696KTC), and Driving without a valid operator license (Case No. 2A0612696KTC). Defendant's reporting is grossly inaccurate and untrue.

4.     Plaintiff has no infractions on her Motor Vehicle Record.

5.     Plaintiff's auto insurer USAA significantly raised Plaintiff's and her husband's insurance rate and notified them that they not going to renew their policy after receiving a background check report from Defendant, which included the inaccurate traffic violations, which do not belong to Plaintiff.

6.     Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public records from Kitsap County, Washington regarding the traffic convictions prior to publishing Plaintiff's report to her auto insurer.

7.     Had Defendant performed even a cursory review of the underlying public records, it would have discovered that the criminal driving records belong to a different consumer who is wholly distinguishable from Plaintiff by their first name and date of birth and even reside in a different part of the country from Plaintiff.

8.      Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9.      Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers by prejudicing their background check reports with inaccurate criminal driving record information.

10.     Defendant's inaccurate report caused Plaintiff and her husband to pay more for their auto insurance and almost cost them auto insurance coverage altogether.

11.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, economic loss; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12.     As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for

failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – **the criminal driving records that do not belong to her** – was inaccurate and delete the disputed information from the subject consumer report, in violation of the FCRA, 15 U.S.C. § 1681i.

## PARTIES

13.    Laura Ann Davis ("Plaintiff" or "Ms. Davis") is a natural person residing in Jacksonville, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14.    Defendant LexisNexis Risk Solutions, Inc. ("Defendant" or "LexisNexis") is a Delaware corporation doing business throughout the United States, including the State of Florida and in this District, and has a principal place of business located at 1000 Alderman Dr., Alpharetta, GA 30005.  LexisNexis can be served at its registered agent, c/o CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

15.    Among other things, Defendant sells background checks to insurers for their use in deciding whether to raise premiums and/or to offer insurance coverage or to take adverse action such as ending insurance coverage.  These reports are provided in connection with a business transaction initiated by the insurer.

16.    Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating

and/or assembling information on consumers for the purpose of furnishing consumer reports for insurance purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the

consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

21.    Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22.    Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

### THE FCRA'S PROTECTIONS FOR BACKGROUND CHECK REPORTS

23.    Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates background check reports like the one Defendant prepared in Plaintiff's name.

24.    The FCRA provides a number of protections for consumers who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25.    In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

26.    The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise

their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27.   Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28.   Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29.   Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal driving records, criminal records, and sex offender registration data.  As a result of the increasing availability of this data, there has been a boom in the background check industry.

30.   As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

31.   The background check industry takes in revenues in excess of three billion dollars, annually.[2]

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

32.     Criminal and driving background checks are generally created by running automated searches through giant databases of aggregated criminal driving record data.  The reports are created and disseminated with little to no manual, in-person review, and the underlying records are rarely directly reviewed in creating criminal and driving background checks.

33.     Background check companies, like Defendant, collect millions of criminal and driving records from a number of sources with data from county, state, and federal level sources.  The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34.     Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

35.     Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

36.     Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving

the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37.     Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38.     Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting traffic convictions that belong to an unrelated consumer who has a different first name and date of birth than Plaintiff. Moreover, Plaintiff has a Florida Driver's license, and the unrelated consumer has a Washington Driver's License.

39.     As a provider of background check reports, Defendant should be aware of the FCRA requirements.

## FACTS
### USAA Raises Plaintiff's Auto Insurance Premium

40.     Plaintiff's USAA auto insurance premium between November 1, 2022, to May 1, 2023, was $1,394.87 for both Plaintiff's and her husband's cars.

41.     On May 1, 2023, Plaintiff and her husband renewed their USAA auto insurance and the premium increased to $1,957.28; a $562.41 increase.

42.     On November 1, 2023, USAA raised Plaintiff and her husband's auto insurance rate again to $2,129.79; an additional $172.51 increase.

43.    During this time period no claims were filed that would have caused the insurance increase.

44.    Plaintiff noticed the premium increases and mistakenly thought the increases were due to inflation and raising insurance costs generally.

**Plaintiff and Husband Receive Nonrenewable Letter from USAA**

45.    On or about March 5, 2024, Plaintiff and her husband received a letter from USAA stating that their auto insurance policy was nonrenewable and would end on May 1, 2024.

46.    USAA stated that the reason Plaintiff and her husband's auto insurance would not be renewed was due to Plaintiff's driving records which included a conviction on March 22, 2023, for driving while license was suspended/revoked. USAA's letter stated that Defendant LexisNexis provided Plaintiff's consumer report.

47.    On or about March 11, 2024, Plaintiff went to the Florida Department of Motor Vehicles and paid $10.00 to obtain her official records.  Plaintiff confirmed that the Florida Department of Motor Vehicles was not reporting any charges, infractions, or convictions on her motor vehicle records.

48.    On or about March 11, 2024, Plaintiff called USAA to address the issue. The USAA representative told Plaintiff that she needed to dispute the traffic convictions that did not belong to her with Defendant LexisNexis.

49.     On or about March 11, 2024, Plaintiff tried to call LexisNexis but was unable to speak with a representative.

50.     Plaintiff being unable to speak to a representative at LexisNexis, went online to LexisNexis's website and was able to obtain access to her LexisNexis credit report.

51.     On or about March 12, 2024, Plaintiff reviewed her LexisNexis report and was shocked to learn that LexisNexis was reporting traffic convictions in her consumer report that belonged to an unrelated consumer.

**Defendant Published an Inaccurate Background Check Report to USAA**

52.     USAA contracted with Defendant to conduct background checks, including driving background checks, on its insured and those seeking insurance.

53.     On or about February 16, 2024, USAA ordered a driving background check on Plaintiff from Defendant.  Upon information and belief, USAA ordered a driving background check on Plaintiff prior to this date as well which would account for Plaintiff's auto insurance rate increases in May of 2023 and November of 2023.

54.     On or about February 16, 2024, in accordance with its standard procedures, Defendant completed its consumer report about Plaintiff and sold the same to USAA.

55.     Within that consumer report, Defendant published inaccurate information about Plaintiff.

Specifically, Defendant's consumer report about Plaintiff included three grossly

inaccurate and stigmatizing traffic convictions from Kitsap County, Washington

which       appeared       in       the       consumer       report       as       follows:

**SECTION 9:**

## Department of Driver Services Records

Records provided by the Department of Driver Services that will include all applications for licenses granted, a record of
the license status, a record of accidents, and abstracts of all court convictions.

RECORD 1   LORI DAVIS ANN

| Driver's License Operator Details: | | | |
|---|---|---|---|
| • Full name on License: | | • License State: | WA |
| • Date of Birth: | 7/XX/1963 | • Gender: | |

Total Pages  21  of  38                     Page 19                     RPT-LNCDR-10-19a

3/12/2024

| • Eye Color: | | • Height: | |
|---|---|---|---|
| • Hair Color: | | • Weight: | |

*Record 1 Source Details: KITSAP DISTRICT COURT - PORT ORCHARD 614 DIVISION ST, MS 25 PORT ORCHARD, WA 98366 (360) 337-7109*

RECORD 2

| Driver's License Operator Details: | | | |
|---|---|---|---|
| • Full name on License: | | • License State: | FL |
| • Date of Birth: | X | • Gender: | |
| • Eye Color: | | • Height: | |
| • Hair Color: | | • Weight: | |

*Record 2 Source Details: FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES -FLHSMV (850) 617-2000*

RECORD 1

| Driver's License Details: | | | |
|---|---|---|---|
| • License Number: | XXXX-X21-62-754-0 | • State of Issue: | FL |
| • Issue date: | 0 | • Expiration date: | 0 |
| • License Type: | | | |
| • Status Code: | | • Status Description: | |
| • Class Code: | | • Class Description: | |

*Record 1 Source Details: FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES -FLHSMV (850) 617-2000*

| RECORD 1 | Driver's License Violation Details: | | | |
|---|---|---|---|---|
| | • Code: | 2461 | • Type: | Conviction |
| | • Points: | 0 | • Case Status: | |
| | • Incident Date: | 11/10/2022 | • Resolution Date: | 12/07/2022 |
| | • Commercial Driving License: | | | |
| | • Case Disposition: | 1024 | | |
| | • Additional Violation Details: | FAIL STOP AT STOP SIGN/INTERSECTION | | |
| | | CASE #: 2A0612697KTCIT | | |
| | | CASE FILE DATE: 20221118 | | |
| | *Record 1 Source Details: KITSAP DISTRICT COURT - PORT ORCHARD 614 DIVISION ST, MS 25 PORT ORCHARD, WA 98366 (360) 337-7109* | | | |
| RECORD 2 | Driver's License Violation Details: | | | |
| | • Code: | 3606 | • Type: | Conviction |
| | • Points: | 0 | • Case Status: | 1003 |
| | • Incident Date: | 11/10/2022 | • Resolution Date: | 03/22/2023 |
| | • Commercial Driving License: | | | |
| | • Case Disposition: | 1003 | | |
| | • Additional Violation Details: | DWLS 3RD DEGREE | | |
| | | CASE #: 2A0612696KTC | | |
| | | CASE FILE DATE: 20221118 | | |
| | *Record 2 Source Details: KITSAP DISTRICT COURT - PORT ORCHARD 614 DIVISION ST, MS 25 PORT ORCHARD, WA 98366 (360) 337-7109* | | | |
| RECORD 3 | Driver's License Violation Details: | | | |
| | • Code: | 4700 | • Type: | Conviction |
| | • Points: | 0 | • Case Status: | 1010 |
| | • Incident Date: | 11/10/2022 | • Resolution Date: | 01/11/2023 |
| | • Commercial Driving License: | | | |
| | • Case Disposition: | 1009 | | |
| | • Additional Violation Details: | NO VALID OPER LICENSE W/OUT IDENTIF | | |

| 3/12/2024 | | |
|---|---|---|
| | CASE #: 2A0612696KTC | |
| | CASE FILE DATE: 20221118 | |
| | *Record 3 Source Details: KITSAP DISTRICT COURT - PORT ORCHARD 614 DIVISION ST, MS 25 PORT ORCHARD, WA 98366 (360) 337-7109* | |

56.    The traffic convictions reported by Defendant about Plaintiff to USAA ***do not*** belong to Plaintiff.

57.    Plaintiff does not have any traffic convictions on her motor vehicle records.

13

58.    A cursory review of the widely available underlying public records confirms that the records belong to an unrelated female, Lori Ann Davis ("Unrelated Davis")..

59.    Had Defendant actually consulted or obtained the widely available underlying public court records regarding the three traffic convictions, it would have seen obvious discrepancies between Unrelated Davis and Plaintiff.

60.    The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Unrelated Davis include the following:

(a)    Plaintiff's legal name is "Laura Ann Davis" and the driving records belong to a "Lori Ann Davis," which is both clearly indicated on the face of the consumer report and in the widely available public records from Kitsap County, Washington;

(b)    Plaintiff's date of birth, which was provided to Defendant prior to publishing the subject consumer report, is in 1962, yet the underlying public court records indicate that Unrelated Davis' date of birth is in 1963;

(c)    Plaintiff lives in Florida and has a Florida Driver's License, which is confirmed and clearly indicated on the face of the subject consumer report, yet the underlying public court records regarding the three traffic convictions indicate that Unrelated

Davis has a Washington Driver's License at the time she committed the offenses; and,

(d)   Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the subject consumer report is entirely different than that of Unrelated Davis.

61.   The sole reason the inaccurate criminal and driving records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's auto insurer.

62.   Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing driving records belong to an unrelated individual with a different first name than Plaintiff, a different date of birth, a different Social Security Number, and who resides in a different part of the country than Plaintiff.

63.   In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's auto insurer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Plaintiff Disputed the Inaccuracies in Defendant's Consumer Report**

64.     On or about March 12, 2024, Plaintiff disputed the inaccurate reporting of Unrelated Davis' driving records on her LexisNexis consumer report.

65.     Plaintiff identified herself and provided information to Defendant to support her dispute.

66.     Plaintiff specifically disputed the driving records of Unrelated Davis.

67.     Plaintiff specifically stated that the driving records of Unrelated Davis do not belong to Plaintiff.

68.     Plaintiff specifically asked Defendant to investigate and delete Unrelated Davis' driving records from any consumer report about Plaintiff.

**Defendant Failed to Conduct a Reasonable Reinvestigation and Correct the Consumer Report**

69.     On April 14, 2024, Plaintiff received a dispute response letter from Defendant LexisNexis stating that it had verified her identity and Plaintiff would receive a follow up letter with specific results from her dispute once the reinvestigation was complete.

70.     On April 15, 2024, Plaintiff received a letter from Defendant LexisNexis with a new consumer report.

71.     Defendant LexisNexis removed Unrelated Davis' criminal record for Driving with a suspended license, Case No. 2A0612696KTC, from Plaintiff's consumer report.

72.     Defendant LexisNexis continued to report the other two disputed traffic convictions, operating a vehicle without a valid license, Case No. 2A0612696KTC and Failing to stop at a stop sign/intersection, Case No. 2A0612697KTCIT.

73.     In addition, Defendant continued to report the name "Lori Ann Davis" and the 1963, date of birth on her report.

74.     Despite Plaintiff's dispute, Defendant failed to conduct a reasonable reinvestigation of Plaintiff's March 12, 2024, dispute and failed to delete the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

75.     On or about April 15, 2024, Plaintiff made a second dispute with Defendant LexisNexis via mail concerning the two traffic convictions of Unrelated Davis that remain on her consumer report.

76.     As of the date of this filing, Plaintiff has not received a dispute response from Defendant LexisNexis.

77.     Plaintiff and her husband contacted USAA to discuss the issue.  They were able to convince USAA that the traffic convictions did not belong to Plaintiff in spite of the inaccurate LexisNexis report.

78.     Accordingly, on or about March 26, 2024, Plaintiff and her husband received a letter from USAA stating that their insurance policy would continue uninterrupted.

79.    On May 1, 2024, Plaintiff and her husband were able to renew their auto insurance with USAA and the rate only increased $3.82.

80.    But for Defendant's inaccurate consumer report, Plaintiff's and her husband's auto insurance rate would not of had the significant increase and they would not have been in jeopardy of losing their auto insurance altogether, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendant's erroneous reporting.

81.    Defendant's false report almost resulted in Plaintiff and her husband losing auto insurance coverage and did cost them approximately $2,036.00 in rate increases due to Defendant's inaccurate reporting.

82.    Due to Defendant's unreasonable procedures and shoddy, if any, dispute reinvestigation, Plaintiff and her husband had to address the issue of the inaccurate information being reported about Plaintiff with USAA directly to save their auto insurance from being terminated.

83.    On or about June 3, 2024, Plaintiff received a letter from the Florida Department of Highway Safety and Motor Vehicles stating that it was going to suspend her driver's license because USAA had reported that Plaintiff's insurance was not being renewed.

84.    Plaintiff stressed and concerned that her Florida Driver's License was going to be suspended had to expend more time and resources in order to have USAA

update the Florida Department of Highway Safety and Motor Vehicles that it was able to renew Plaintiff's insurance, that Plaintiff was in fact insured and that her license should not be suspended for not having insurance.

85.    Plaintiff is living in constant fear of how the unrelated consumer's traffic convictions being reported on Plaintiff's consumer report is going to affect her next.

86.    The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

87.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of economic opportunities; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to
### Assure Maximum Possible Accuracy

88.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

89.     Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

90.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

91.     At all times pertinent hereto, the above-mentioned consumer report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

92.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

93.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of economic opportunities; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

94.    Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.   Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

95.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
## Failure to Perform a Reasonable Reinvestigation

96.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

97.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation.  *Id*.

98.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to

verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

99.    On at least one occasion during 2024, Plaintiff disputed the inaccurate information with Defendant and requested that Defendant correct and/or delete the inaccurate information in the consumer report that is patently inaccurate, misleading, and highly damaging to her, namely, stating that she was convicted of three traffic offenses.

100.    In response to Plaintiff's dispute, Defendant failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the consumer report and refused to correct the consumer report at issue.

101.    Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to delete the disputed inaccurate information from the subject consumer report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a public source it has reason to know is unreliable.

102.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of economic opportunities; loss of time and money trying to correct her background check report;

the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

103.   Defendant willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.   Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

104.   Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.   Determining that Defendant negligently and/or willfully violated the FCRA;

ii.   Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.   Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.  Granting further relief, in law or equity, as this Court may deem appropriate

and just.

DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so

triable.

Dated: June 11, 2024

CONSUMER ATTORNEYS

*/s/Catherine Tillman*
Catherine Tillman, Esq., FL #0057663
CONSUMER ATTORNEYS
8245 N. 85th Way
Scottsdale, AZ 85258
T : (941) 263-7310
F: (718) 715-1750
E: ctillman@consumerattorneys.com


*Attorneys for Plaintiff,*
*Laura Ann Davis*